Price, C. J.
On the 23d day of December, A. D. 1907, a local option election was held in the village of Johnstown, Licking county, Ohio, at which the electors of said village, by a majority vote decided against the sale of intoxicating liquors as a beverage therein, of which election and its result due record was made by the clerk of said village.
On the 23d day of January, 1908, certain persons, of which J. M. Wright was one, filed with the mayor of that village an affidavit against the defendant in error, Bernard J. Mattingly, charging, in substance, that on the 23 d day of January, 1908, - intoxicating liquors, to-wit: distilled, malt and vinous liquors, with the vessel in which they were contained, and implements and furniture used m connection with the illegal selling, furnishing and giving away of said intoxicating liquors, were kept in the village of Johnstown, in said county of Licking' and state of Ohio, on the premises and in the building thereon located. Then follows a description of the place formerly occupied by B. J. Mattingly on Main street, as a saloon, and that said intoxicating liquors were kept for the purpose of being sold, furnished and given away as a beverage in said village, in violation of the municipal local option law, and that said building is not a bona fide private residence.
The affidavit proceeds to charge that said intoxicating liquors are still concealed and said vessels, implements and furniture were then kept *81 in said place for the purpose aforesaid. The record recites that the proceeding was being instituted under the Woods law, passed February 23, 1906, for the purpose of obtaining a warrant to search said premises and seize the contraband property, as well as the arrest of Mattingly. Service of the warrant was made and he was taken before the mayor for trial. He was found guilty and ordered to pay a fine of $200 and the costs of the prosecution, and that he stand committed until said fine and costs should be paid. Bond was given for a suspension of the sentence until the accused could obtain leave of the proper court to. file a petition in error. A bill of exceptions was taken by Mattingly, containing the evidence adduced on the trial, which was allowed and signed by the mayor as required by statute, on the 16th day of March, 1908
On the 2d day of April, 1908, Mattingly through his attorneys, and after due notice to the state of the intention to do so, presented to the circuit court of Licking county a motion asking leave of that court to file therein a petition in error to review and reverse the judgment of said mayor. Leave was granted and the petition in error and said bill of exceptions and original papers were filed. The state took exception to the granting of the leave
The case on error was heard by the circuit court, and it reversed the judgment of the mayor for error, to-wit: “that the judgment of the said mayor is not sustained by sufficient evidence and is against the clear weight of the evidence.” The case was remanded to the mayor’s court for *82 further trial according to law. To this judgment of reversal the state of Ohio excepted, and error is prosecuted in this court to obtain a reversal of the judgment, of the circuit court.
The state challenges the jurisdiction of the circuit court to entertain the proceeding in error to review the judgment of the mayor, and of course denies the authority of the circuit court to grant leave to file therein a petition in error for such purpose. It is claimed that if Mattingly desired to prosecute error to the judgment of the mayor, he should have first knocked at the door of the court of common pleas, and if his suit failed there, he might then, and only then, be heard in the circuit court. This is an important question in our criminal procedure, and its solution involves a consideration of Section 7356, Revised Statutes, which is:
“In any criminal' case, including a conviction for a violation of an ordinance of a municipal corporation, the judgment or final order of a court or officer inferior to the common pleas court may be reviewed in the common pleas court; and a judgment or final order of any court or officer inferior to the circuit court may be reviewed in the circuit court; and a judgment or final order of the circuit court or the common pleas court in cases of conviction of a felony or a misdemeanor, and the judgment of the circuit court in any other case involving the constitutionality or construction of a statute, may be reviewed by the supreme court; but the supreme court shall not in any criminal cause or proceeding, except when its *83 jurisdiction is original, be required to determine as to the weight of the evidence.”
This is not a new provision, for its central rule is found in the Revised Statutes of 1880, in a section bearing the same number, where it was provided that; “In any criminal case, including a conviction for a violation of an ordinance of a municipal corporation, a judgment of a court or officer inferior to the court of common pleas, may be reviewed in the court of common pleas; judgment of any court (or officer omitted) inferior to the district court may be reviewed in the district court; and the judgment of any court inferior to the supreme court may be reviewed in the supreme court.” The section (7356) was amended April 18, 1883, by adding the words, “and the judgment of the district court in any other case involving the constitutionality or construction of a statute, may be reviewed in the supreme court; but in the supreme court only errors of law occurring at the trial or appearing in the pleadings or judgment can be reviewed.” See 80 O. L., 170 And so the law stood until the advent of the circuit court, which supplanted the district court, and by virtue of the constitutional amendment under which the circuit court was organized, it took over the former powers and jurisdiction of the district court. The section was again amended February 7, 1885, leaving out the words, “but in the supreme court only errors of law occurring at the trial, or appearing in the pleadings or judgment can be reviewed,” and substituting, “but the supreme court shall not in any criminal cause or proceeding, except when its *84 jurisdiction is original, be required to determine as to the weight of the evidence.” See 82 O. L., 39.
After undergoing the foregoing changes, we have our present section, which seems to be free of ambiguity and readily comprehended. Does the case at bar come within the provisions of the section ?
The affidavit before the mayor charged Mat-tingly with a violation of a criminal statute of the state. The village of Johnstown, at the date named therein, was what is called dry territory, because of an election there held on the 23d day of the preceding December, when a majority of the electors of the village voted “against the sale of intoxicating liquors as a beverage.” As a result of that election it became unlawful for anyone engaged in the retail of intoxicating liquors as a beverage to continue said business after the period of thirty days from the date of said election. It was charged that Mattingly had the contraband goods on hand after the time expired at his former usual place of business, and the complainants before the mayor availed themselves of. the provisions of an act entitled “An act to provide for the .enforcement of local option laws prohibiting the sale of intoxicating liquors as a beverage,” passed February 23, 1906. See 98 O. L., 12. This act is sometimes called the search and seizure law, the provisions of which are very stringent in order that the will of the majority may be carried out. Suspected places may be searched, property taken and the owner arrested and punished, as was done in this case, and by *85 Section 20 of the act it is provided that, “no petition in error shall be filed in any court to reverse any conviction for violation of any law prohibiting the sale of intoxicating liquors in any territory or district, or to reverse any judgment affirming such conviction, except after leave granted by the reviewing court, and no such leave shall be granted except after good cause shown at a hearing of which counsel for the complainant in the original case shall have had actual and reasonable notice.”
Section 21 limits the time to file such, petition in error to thirty days from date of conviction, and the case must be heard in the reviewing court within thirty court days from the filing of the petition in error.
Therefore it was a criminal case that was presented to the circuit court, and which it admitted to its docket and afterwards reversed.
It is true that the petition in error might have been presented to the court of common pleas for leave to file the same, if such court was accessible during the thirty-day period of limitation; but it may be that a common pleas court was not open in lucking county during that period, and the leave to file the petition cannot be given by a judge of such court. It can be obtainéd only from the reviewing'court.
In the case at hand the circuit court heard the application after lawful notice had been given, and granted it. Now -according to Section 7356, Revised Statutes, “in any criminal case * * * a judgment or final order of any court or officer inferior to the circuit court may be reviewed in *86 the circuit court.” This does not mean that before you can enter the circuit court you must enter and pass through the court of common pleas. The clause last quoted would be superfluous if such restriction prevails, because without it error could be prosecuted in the circuit court to review the judgment of the court of common pleas. The jurisdiction of the circuit court in criminal cases is not confined to a review of judgments, of the court of common pleas, but includes the power to review the judgment or final order of any court or officer inferior to the circuit court. So says the statute in plain words. Of course the circuit court may review the judgment of the court of common pleas in a criminal case. So can this court, but its jurisdiction does not end there, and for obvious reasons, one of which may have existed in the present case, namely, the absence of a court of common pleas from, and the presence of the circuit court in, Licking county during the thirty-day period of limitation.
The plaintiff in error cites Burrows v. Vandevier et al.; 3 Ohio Rep., 383; Bartlett v. State, 22 Ohio St., 205; and State v. Rouch, 47 Ohio St., 478-481. The plaintiff in error is not benefited by Burrows v. Vandevier, supra; in fact it is an authority against its contention. The headline is, “writ of certiorari lies from the supreme court direct to inferior jurisdictions, but will be sustained only in extraordinary cases.” The writ of certiorari was addressed to the commissioners of Warren county, requiring them to certify to the court their proceedings in a certain road case, which was done. It was objected that *87 the writ ought to be dismissed because it was not a case in which the exercise of a sound discretion requires that it should be allowed. The court said in that case: “It is admitted that the court possesses jurisdiction to award it in a case like this; but urged that it ought not to be sustained, because the plaintiff is certiorari had a more easy and expeditious remedy in the court of common pleas. We assent to the justness of this argument, but under existing circumstances we have concluded to sustain the writ in question. As the jurisdiction is conceded, and no rule had been laid down with respect to cases in which it would be exercised, we are not willing to turn the party out of court in whose case a rule is first to be made known to operate in other cases. Hereafter we shall not sustain a writ of certiorari direct to any inferior jurisdiction where the court of common pleas have power to act, unless the case be attended with some extraordinary circumstances.”
Bartlett v. State, supra, also fails to support the plaintiff in error. The case is disposed of in the following per curiam: “This is an application for the allowance of a writ of error to the police court of Cincinnati. We refuse to allow the writ for the reason that the application can be made as well to the court of common pleas. Were we to establish the practice that all such applications are to be made to this court, without first going to the common pleas, we should be utterly unable to dispose of the business of this court. Necessity, therefore, compels us to confine the hearing of *88 such applications to exceptional cases, where the special circumstances render it necessary.”
In that statement the jurisdiction of the supreme court to hear an application for the review of the judgment of the police court is not questioned, but held to be ample; yet for the reason stated, this court would, except in special cases, remit the party to a lower court in the first instance. The case announces that under the rule then prevailing, it was a matter of discretion in this court whether it would permit a party to come' directly from the police court, or court of common pleas, to this court. We think the rule is the same now, and the circuit court might have refused leave to file a petition in error in this case, but it did not do so.
When we examine State v. Rouch, supra, we find that the case is likewise unfavorable to plaintiff in error. The syllabus contains nothing upon the subject, and there is nothing in the opinion that comes to the support of the claim made here.
Content with the plain language of the section (7356) under consideration and believing the circuit court had jurisdiction in this case under its provisions, we will not prolong this opinion.
One or two other questions are argued in briefs of counsel, but their decision involves the weighing of the evidence, and we are not required to do that.
The judgment of the circuit court is affirmed.

Judgment affirmed.

Crew, Summers and Spear, JJ., Concur.